**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| LINDA KING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 3:20-cv-3459 |
| | § | |
| EQUIFAX INFORMATION | § | With Jury Demand Endorsed |
| SERVICES LLC, EXPERIAN | § | |
| INFORMATION SOLUTIONS, INC., | § | |
| TRANS UNION LLC, INNOVIS DATA | § | |
| SOLUTIONS, Inc., and NATIONSTAR | § | |
| MORTGAGE LLC, | § | |
| | § | |
| Defendants. | § | |

**COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Linda King ("Plaintiff"), by and through counsel, for her Complaint against

Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., Trans Union

LLC, Innovis Data Solutions, Inc., and Nationstar Mortgage LLC, jointly, severally, and in solido,

states as follows:

**I.   INTRODUCTION**

1.        Four of the Defendants are, consumer reporting agencies ("CRAs") as defined by 15

U.S.C. § 1681a(f), and Defendant, Nationstar Mortgage LLC is a furnisher of consumer information.

All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the

Page 1 of 25

"FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, Linda King, is a natural person residing in McDowell County, North Carolina, is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian

regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.      Upon information and belief, Innovis Data Solutions, Inc., which may also hereinafter be referred to as "Innovis", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 250 E. Town Street, Columbus, Ohio 43215. Innovis is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Innovis regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Innovis disburses such consumer reports to third parties of contract for monetary compensation.

7.     Upon information and belief, Defendant Nationstar Mortgage, LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Headquarters and/or Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8.     As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, TransUnion, and Innovis.

### III.  JURISDICTION AND VENUE

9.     Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

10.     Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

11. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiffs' dispute sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

Background Information for Plaintiff's Nationstar Mortgage

12.     In July 2005, Plaintiff secured a home equity loan for her property located at 245 Fifth C. Street, Marion, McDowell County, North Carolina 28752 with SpringLeaf Financial Services.

13.     Soon thereafter in September 2014, Nationstar acquired the Home Equity loan on the same property and assigned it loan number xxxxx5557.

14.     Plaintiff made regular and timely payments to the Nationstar Loan and continues to make such payments.

15.      A redacted copy of Plaintiff's payment history to Nationstar is attached hereto as Exhibit "A" and incorporated in by reference.

16.      Plaintiff's payment activity shows that the payments were entirely made on time or ahead of time.

17.      In fact, the payment history to Nationstar shows a pattern of consistent and timely payments. Several months show double payments. (*See* Exhibit "A')

<u>Credit Reporting</u>

18.      Sometime in January 2020, Plaintiff pulled her Equifax credit report and noticed that it was not accurate.

19.      Within the Equifax credit report, Plaintiff noticed that her Nationstar payments were marked Unknown from September 2014 to February 2016, missing payment status from November 2019 to January 2020, and most were marked as late from March 2016 to October 2019, except for payments made on April 2016, July 2017, December 2017, June 2018, and November 2018, which were marked timely.

20.      A redacted copy of Plaintiff's Equifax Credit Report is attached hereto as Exhibit "B" and incorporated in by reference.

21.      Sometime in January 2020, Plaintiff pulled her Trans Union credit report and noticed that it was not accurate.

22.      Within the Trans Union credit report, Plaintiff noticed that her payments to Nationstar were missing from September 2014 to October 2015 and November 2019 to January 2020, and most were marked as late from November 2015 to October 2019, except for payments made on April 2016, July 2017, December 2017, June 2018, and November 2018, which were

marked timely.

23.     A redacted copy of Plaintiff's Trans Union Credit Report is attached hereto as Exhibit "C" and incorporated in by reference.

24.     Sometime in February 2020, Plaintiff pulled her Innovis credit report and noticed that it was not accurate.

25.     Within the Innovis credit report, Plaintiff noticed that it reported most of her payments to Nationstar as late from January 2015 to November 2019, except for November 2014, March to April 2015, July to August 2015, April 2016, July 2016, December 2017, June 2018, and November 2018, which were marked timely.

26.     A redacted copy of Plaintiff's Innovis Credit Report is attached hereto as Exhibit "D" and incorporated in by reference.

27.     Sometime in March 2020, Plaintiff pulled her Experian credit report and noticed that it was not accurate.

28.     Within the Experian credit report, Plaintiff noticed that it reported most of her payments to Nationstar as late from January 2015 to January 2020, except for November 2014, March to April 2015, July to August 2015, April 2016, July 2017, December 2017, June 2018, and November 2018, which were marked timely.

29.     A redacted copy of Plaintiff's Experian Credit Report is attached hereto as Exhibit "E" and incorporated in by reference.

<u>Credit Reporting Dispute Letters</u>

30.     On or about April 17, 2020, Plaintiff sent direct disputes to Equifax, Experian, Trans Union, and Innovis and requested that the CRA Defendants investigate the reporting of the

Nationstar mortgage account. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage account.

31.     Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax, Experian, Trans Union, and Innovis are each attached as Exhibits "F", "G", "H", and "I", respectively and incorporated in by reference.

32.     Equifax responded to Plaintiff on May 13, 2020.

33.     A redacted copy of Equifax's response is attached hereto as Exhibit "J" and incorporated herein by reference.

34.     Equifax responded to Plaintiff by stating that the "Account has been updated", but failed to modify, make timely, or change the disputed payments and offered no explanation despite claiming to do so.

35.     Equifax's response was not the result of a reasonable investigation into Plaintiff's dispute. Equifax failed to conduct a reasonable investigation into Plaintiff's dispute for it did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar tradeline because Plaintiff sent a clear dispute  and provided a payment history showing timely payments for the disputed months and yet Equifax made no changes to the disputed dates and gave no explanation as to why the Nationstar tradeline reported late payments.

36.     Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

37.     In accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

38.     In the alternative, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

39.     In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

40.     Experian responded to Plaintiff's dispute on May 13, 2020.

41.     A redacted copy of Experian's response is attached hereto as Exhibit "K" and incorporated herein by reference.

42.     Experian's response to Plaintiff claimed "Updated-The item you disputed has been updated," however there were no disputed changes to the payments to the Nationstar tradeline and the inaccurate late payments remained.

43.     Experian's response was not the result of a reasonable investigation into Plaintiff's dispute. Experian failed to conduct a reasonable investigation into Plaintiff's dispute for it did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar tradeline because Plaintiff sent a clear dispute and provided a payment history showing timely payments for the disputed months and yet Experian made no changes to the disputed dates, and gave no explanation as to why the Nationstar tradeline reported late payments

44.     Experian chose to "verify" false information from an unreliable source, failed to

correct the inaccurate information and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

45.     In accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

46.     In the alternative, Experian failed to contact Nationstar, therefore, failed to perform any investigation at all.

47.     In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

48.     Trans Union responded to Plaintiff's dispute on May 13, 2020.

49.     A redacted copy of Trans Union's response is attached hereto as Exhibit "L" and incorporated herein by reference.

50.     Trans Union responded to Plaintiff by claiming "A change was made to the Item(s) based on our dispute," however it made no changes to the disputed payments and the inaccurate late payments still remained.

51.     Trans Union's response was not the result of a reasonable investigation into Plaintiff's dispute. Trans Union failed to conduct a reasonable investigation into Plaintiff's dispute for it did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar tradeline because Plaintiff sent a clear dispute and provided a payment history showing timely payments for the disputed months and yet Trans Union made no changes to the disputed dates and gave no explanation as to why the Nationstar tradeline

reported late payments

52.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

53.     In accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

54.     In the alternative, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

55.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

56.     Innovis responded to Plaintiff's dispute on May 19, 2020.

57.     A redacted copy of Innovis's response is attached hereto as Exhibit "M" and incorporated herein by reference.

58.     In its response letter to Plaintiff's dispute ("Innovis' Response Letter"), Innovis stated in pertinent part that the Nationstar tradeline has "been deleted from your Innovis Credit Report."

59.     Innovis' response was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Nationstar tradeline because even though Plaintiff clearly explained the circumstances supporting her dispute and proved she has been making payments, Innovis did not update her report to include those payments and instead chose to remove

the entire tradeline.

60.     In accordance with Innovis's standard procedures, Innovis did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

61.     In the alternative, Innovis failed to contact Nationstar, therefore, failed to perform any investigation at all.

62.     In the alternative to the allegation that Innovis failed to contact Nationstar, it is alleged that Innovis did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

63.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

64.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

65.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

66.     Equifax knew or should have known Plaintiff's account status and payment history

were inaccurate, but Equifax continued to prepare a patently false consumer report concerning Plaintiff.

67.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

68.     After Equifax knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections.

69.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

70.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

71.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

72.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

73.     Equifax violated 1681i by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain

reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

74.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

75.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

76.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

77.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

78.     Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

79.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

80.     Experian knew or should have known of Plaintiff's account status and payment history, but Experian continued to prepare a patently false consumer report concerning Plaintiff.

81.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

82.     After Experian knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections.

83.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

84.     Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

85.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

86.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

87.     Experian violated 15 U.S.C. § 168li on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such

inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to the furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

88.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

89.     Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

90.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT V – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

91.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

92.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

93.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b)

(emphasis added).

94.     Trans Union knew or should have known of Plaintiff's account status and payment history, but Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

95.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

96.     After Trans Union knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections.

97.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

98.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

99.     The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

### COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

100.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

101.     Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such

inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

102.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

103.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

104.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VII – INNOVIS'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

105.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

106.    Innovis violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

107.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b)

(emphasis added).

108.    Innovis knew or should have known of Plaintiff's account status and payment history were inaccurate but continued to prepare a patently false consumer report concerning Plaintiff.

109.    Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Innovis readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

110.    After Innovis knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections. Furthermore, Plaintiff did not request for the Nationstar mortgage tradeline be deleted.

111.    As a result of Innovis's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

112.    Innovis's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

113.    The Plaintiff is entitled to recover costs and attorney's fees from Innovis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## COUNT VIII – INNOVIS'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

114.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

115.     Innovis violated 15 U.S.C. § 1681i on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

116.     As a result of Innovis's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

117.     Innovis's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

118.     The Plaintiff is entitled to recover costs and attorney's fees from Innovis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IX – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

119.   Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

120.   Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiff's credit file with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

121.   As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in his attempt to refinance, loss in his ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

122.   Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

123.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

124.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

125.    Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

126.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

127.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

128.    Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

129.    Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

130.    Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, denial in her attempt to refinance her mortgage, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Linda King, prays that this Honorable Court:

A.    Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, Innovis Data Solutions, Inc., and Nationstar Mortgage LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.    Find that the appropriate circumstances exist for an award of punitive damages to

Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.      Order that the CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Innovis Data Solutions, Inc., and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.


Date Filed: November 20, 2020


                                        Respectfully submitted,

                                        */s/ Matthew P. Forsberg*
                                        Matthew P. Forsberg
                                        TX State Bar Number 24082581
                                        Matt@FieldsLaw.com
                                        FIELDS LAW FIRM
                                        9999 Wayzata Blvd.
                                        Minnetonka, Minnesota 55305
                                        (612) 383-1868 (telephone)
                                        (612) 370-4256 (fax)

                                        **LAW OFFICE OF JONATHAN A. HEEPS**

                                        */s/ Jonathan A. Heeps                           .*
                                        Jonathan A. Heeps
                                        State Bar No. 24074387
                                        LAW OFFICE OF JONATHAN A. HEEPS
                                        Post Office Box 174372
                                        Arlington, Texas 76003

Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com

COUNSEL FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

November 20, 2020                     */s/ Matthew P. Forsberg*
Date                                  Matthew P. Forsberg